Kermit OLSON, d/b/a Olson Plastering Company, Appellant,

v.

CENTRAL POWER AND LIGHT COMPANY, Appellee.

No. 13–90–166–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 24, 1991.

Rehearing Overruled Feb. 21, 1991.

Gary Norton, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellant.

Deborah R. Sundermann, Redford, Wray & Woolsey, Corpus Christi, for appellee.

Before BENAVIDES, KENNEDY and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

Kermit Olson, D/B/A Olson Plastering Company, appeals a summary judgment in favor of Central Power & Light Company (hereinafter "CP & L") in CP & L's suit for statutory indemnity under the Texas Public Utilities Act.[1] Olson raises seven points of error, all related to the relationship between the Texas Public Utilities Act and the Texas Workers' Compensation Act[2] with regard to statutory indemnification. CP & L raises one cross-point: that the trial court erred in denying its motion regarding attorney's fees, expenses and interest. We affirm the trial court's judgment in part and reverse and render it in part.

On January 6, 1983, Manley Smith, an Olson employee, sustained personal injuries as a result of contacting an electrical overhead power line owned, operated and maintained by CP & L. Olson had been hired in connection with the construction of a three-story office building located near CP & L's electrical power lines. Smith filed suit against CP & L and others for the injuries resulting from his electrocution. Olson's workers' compensation carrier provided workers' compensation benefits to Smith. Smith did not sue Olson. However, Olson was made a party to the suit when CP & L filed a third party suit against Olson to recover statutory indemnity from Olson pursuant to article 1436c, § 7(b) of the Texas Public Utilities Act. Olson answered that he was immune from liability to third parties pursuant to the Texas Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 8306, § 3(a) & (d). CP & L settled with Smith and this cause was severed. CP & L and Olson filed cross-motions for summary judgment: Olson argued that the Texas Workers' Compensation Statute was controlling and CP & L argued that the Texas Public Utilities Act was controlling. The trial court denied Olson's motion in its entirety and granted CP & L's motion except for attorney's fees, expenses and interest incurred in defending CP & L in Smith's suit.

---

1. Tex.Rev.Civ.Stat.Ann. art. 1436c, § 7(b) (Vernon 1980) (repealed 1989) (now Tex.Health & Safety Code § 752.008 (Vernon Pamph.1991)).

2. Tex.Rev.Civ.Stat.Ann. art. 8306, § 3(a) & (d) (Vernon Supp.1991) (repealed, effective Jan. 1, 1991).

By seven points of error, Olson alleges that the trial court erred in denying its motion for summary judgment and in granting CP & L's motion for summary judgment. The purpose of summary judgment is to eliminate patently unmeritorious claims or untenable defenses. *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex.1972); *Wisenbarger v. Gonzales Warm Springs Rehabilitation Hosp.*, 789 S.W.2d 688, 691 (Tex.App.—Corpus Christi 1990, writ denied). None of Olson's points of error challenges the propriety or sufficiency of the evidence submitted by CP & L in support of its motion for summary judgment. The violation of the Public Utilities Act, the liability incurred by CP & L as a result of the violation, and the reasonableness of the settlement are not made issues in this appeal and are not disputed. Rather, all of Olson's points of error relate to the relationship between the Public Utilities Act and the Workers' Compensation Act and the interpretation of article 1436c. Whether a particular legal principal is applicable in a case or governs a case is a matter of law for the trial court. *Wisenbarger*, 789 S.W.2d at 691. Similarly, matters of statutory construction are questions of law for the trial court and may be resolved in a summary judgment. *Id.* By his first four points of error, Olson challenges the trial court's statutory interpretation of the two apparently conflicting statutes.

The pivotal issue in this case is whether a party otherwise entitled to indemnification pursuant to article 1436c, § 7(b), is nonetheless precluded from indemnity recovery because of the provisions of the Texas Workers' Compensation Act, art. 8306, § 3, which shield a workers' compensation subscriber from liability to third parties for suits brought against third parties by the subscriber's employees.

The Public Utilities Act, art. 1436c, § 7(b) states:

> If a violation of this Act results in physical or electrical contact with any high voltage overhead line, the person, firm, corporation, or association violating the provisions of this Act shall be liable to the owner or operator of such high voltage line for all damage to such facilities and for all liability incurred by such owner or operator as a result of any such contact.

The Texas Workers' Compensation Act art. 8306, § 3(d) states:

> If an action for damages on account of injury to or death of an employee of a subscriber is brought by such employee ... against a person other than the subscriber ... and such action results in a judgment against such other person, or results in a settlement by such other person, the subscriber ... shall have no liability to reimburse or hold such other person harmless on such judgment or settlement, nor shall the subscriber ... have any tort or contract liability for damages to such other person because of such judgment or settlement, in the absence of a written agreement expressly assuming such liability....

Article 1436c, § 7(b) of the Texas Public Utilities Act was enacted in 1971. The language shielding the subscriber in article 8306, § 3(d) was first used in 1963. The language in article 1436c, § 7(b) is more specific than that used in the Workers' Compensation Act: article 1436c creates liability only in the particular instance of a contact with a high power line and only to the owner or operator of the high voltage overhead line; article 8306 provides immunity from liability in all situations.

Generally, if statutes enacted at different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails. *Clark v. Young*, 787 S.W.2d 166, 168 (Tex.App.—Fort Worth 1990, writ denied); Tex.Gov't.Code Ann. § 311.025(a) (Vernon 1988); *see also Alexander Ranch, Inc. v. Central Appraisal Dist. of Erath Cty.*, 733 S.W.2d 303, 308 (Tex.App.—Eastland 1987, writ ref'd n.r.e.). Also, special laws prevail over general laws in cases of conflict.[3] *See Clark*, 787

---

3. Generally, the special or specific statutes operate as exceptions to or qualifications of the general statutes. *Franklin v. Pietzsch*, 334

S.W.2d 214, 219 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.); *see also City of Houston v. Arney*, 680 S.W.2d 867, 875 (Tex.App.—Houston

S.W.2d at 169; *e.g., City of Houston v. Arney*, 680 S.W.2d 867, 875 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Lakeridge Dev. Corp. v. Travis County Water Control & Improvement Dist.*, 677 S.W.2d 764, 767 (Tex.App.—Austin 1984, no writ); *Franklin v. Pietzsch*, 334 S.W.2d 214, 219 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r. e.).

We believe that the issue of the relationship between these statutes was correctly addressed in *Houston Lighting & Power Co. v. Eller Outdoor Advertising Co.*, 635 S.W.2d 133 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). Factually, *Eller* is directly on point with this case: while working, one of Eller's employees was electrocuted when he came into contact with a high power line owned by Houston Lighting & Power. *Eller*, 635 S.W.2d at 133. His family collected workers' compensation benefits from Eller's workers' compensation insurance carrier. *Id.* The *Eller* court determined that the later, more specific Public Utilities Act should be given controlling effect over the older, more general terms of the Texas Workers' Compensation Act, and it viewed the indemnity action as arising from the breach of Eller's statutory duty under the Public Utilities Act rather than "on account of" an injury to or death of an employee. *Id.* at 134–35. This view was adopted as being consistent with the legislative intent in protecting workers in this State. *Id.* We agree with the reasoning in *Eller* and its holding that the Public Utilities Act, being a later and more specific statute, is controlling.

■ Additionally, we note that a statute is presumed to have been enacted by the Legislature with complete knowledge of the existing law and with reference to it. *Acker v. Texas Water Com'n*, 790 S.W.2d 299, 301 (Tex.1990); *Clark*, 787 S.W.2d at 168–69; *accord Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex.1984). In 1989, article 1436c was repealed and codified virtually verbatim into the Health and Safety Code § 752.008 (Vernon Pamph.1991), seven years after the court of appeals handed down *Eller*. Hence, the Legislature is presumed to have known that, according to *Eller*, article 1436c prevailed over article 8306 and chose to continue the preference of indemnity over immunity. We overrule Olson's first through fourth points of error.

■ By its fifth point of error, Olson contends that allowing CP & L to recover indemnity is error because 1436c does not expressly state that CP & L will be indemnified against its own negligence. Olson urges us to apply the express negligence doctrine of contractual indemnity set forth in *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex.1987), that a party will not be indemnified for damages caused by its own negligence in the absence of a written agreement expressly providing for indemnity against the party's own negligence. In support of its position, Olson cites four cases dealing specifically with contractual indemnity and the express negligence rule. *See Singleton v. Crown Cent. Petroleum Corp.*, 729 S.W.2d 690 (Tex.1987); *Ethyl*, 725 S.W.2d 705; *Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208 (Tex.1980); *Spence v. Howe Constr. Co. v. Gulf Oil Corp.*, 365 S.W.2d 631 (Tex.1963). None of the cases Olson cites provides any authority for applying the express negligence rule regarding a contractual indemnity agreement between two parties to statutory indemnity imposed by the Legislature.

Furthermore, we note that the express negligence doctrine exists to defeat crafty scriveners who create ambiguous indemnity contracts in an effort to deceive the indemnitor regarding the true extent of its liability. *Ethyl*, 725 S.W.2d at 707–08. Such a situation does not exist in statutory indemnity. We decline to expand the doctrine of express negligence to instances of statutory indemnity. We overrule Olson's fifth point of error.

■ Olson's sixth and seventh points of error directly attack article 1436c. By its sixth point of error, Olson contends that allowing CP & L to recover statutory in-

[1st Dist.] 1984, no writ); *Lakeridge Dev. Corp. v. Travis County Water Control & Improvement*

*Dist.*, 677 S.W.2d 764, 767 (Tex.App.—Austin 1984, no writ).

demnity from Olson pursuant to article 1436c violates the due process and equal protection clauses of the Texas and United States Constitutions because the statute fails to give adequate and fair notice that it has any intention and purpose to abrogate article 8306. Olson neither argues nor presents any authority for its equal protection arguments under the Texas or United States Constitutions; Olson has waived those portions of its point of error. *See* Tex.R.App.P. 74(f).

Olson's due process attack on 1436c is to the clarity of the statute; Olson attacks 1436c as void on the grounds that it is vague. A statute is fatally vague only when it exposes a potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct. *Texas Liquor Control Bd. v. Attic Club, Inc.*, 457 S.W.2d 41, 45 (Tex.1970). Due process is violated only when a required course of conduct is stated in terms so vague that men of common intelligence must guess at what is required. *Id.*

Olson admits that the void for vagueness doctrine of due process usually applies to invalidate as unconstitutional those laws that vaguely prohibit conduct. Nevertheless, he argues that the doctrine should apply in this case where the law is not clear about its application to employers as a particular class of persons granted "immunization liability" or to the extent of liability regarding whether a public utility can be indemnified for its own negligence. Olson contends that 1436c does not provide fair notice that employers' statutory immunity under 8306 will not apply in certain situations. He also claims that the law is not clear on the extent of liability regarding whether a public utility can be indemnified against its own negligence.

We disagree with Olson. Article 1436c is clear: employers are not to place employees or equipment within six feet of live power lines. *See* art. 1436c, § 3; *see generally, Ringo v. Gulf States Utils. Co.*, 569 S.W.2d 31, 33–34 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.) (1436c is clear regarding the duty imposed and applies to employers, not employees). The statute then states that, in the event the act is violated, the person, firm, corporation, or association violating the act shall be liable. Art. 1436c, § 7(b). The statute is not rendered vague simply because it does not have a separate and specific notice to employers who subscribe to workers' compensation insurance that they will also be liable in exception to their statutory immunity. We conclude that a person of common intelligence would be placed on notice that this statute applied to all employers (regardless of whether they were otherwise subject to a general statutory indemnity) and that they were not to place their employees or equipment within six feet of a live overhead power line. We further conclude that the statute clearly provided that the party violating its provision would be held liable to the owner or operator of the power line who incurred liability as a result of the violation of the statute. We overrule Olson's sixth point of error.

By its seventh point of error, Olson contends that article 1436c, § 7(b) violates the mandate of the Texas Constitution requiring open courts and remedy by due course of law because it purports to preclude a subscriber-employer's defense of immunity from liability for indemnity to all persons, as provided in 8306, without stating any intention to do so. Article I, § 13 states that "All courts shall be open, and every person for an injury done to him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. Olson argues that when a statute takes away a recognized defense, it violates article I, § 13. In support of his position, he cites two cases, *Nelson v. Krusen*, 678 S.W.2d 918 (Tex. 1984), and *Sax v. Votteler*, 648 S.W.2d 661 (Tex.1983). Contrary to Olson's contention, *Nelson* and *Sax* do not support his argument.

In *Nelson*, the court recognized that a statute of limitations defense could not cut off a suit for medical malpractice before the plaintiff reaches the age of legal capacity. *Nelson*, 678 S.W.2d at 920. Similarly, the court in *Sax* held that a statute which removed the previously allowed tolling of

the two year statute of limitations in medical malpractice actions by minors after reaching the age of six violated the open courts provision. *Sax,* 648 S.W.2d at 667.

*Nelson* and *Sax* both illustrate the right to bring a suit by due course of law as the thrust of the open courts doctrine. The establishment of a specific statutory indemnity limiting the scope of a more general statutory immunity does not deny Olson open courts and remedy by due course of law. We overrule Olson's seventh point of error.

CP & L raises one cross-point: that the trial court erred in denying its summary judgment with regard to indemnity for attorney's fees, costs and interest incurred in defending Smith's case. CP & L states that it does not appeal the trial court's failure to grant attorney's fees, expenses, and interest for the indemnity action itself. Olson responds with two reply points: that article 1436c does not provide for indemnity for attorney's fees, costs, and interest and that CP & L's summary judgment evidence is not sufficient to support attorney's fees.

 Generally, attorney's fees are not recoverable unless the same is provided for by a statute or a contract between the parties. *Veale v. Rose,* 657 S.W.2d 834, 841 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Article 1436c, § 7(b) provides that the person who violates the act will be responsible for *all liability* incurred by the owner or operator of the power line. We believe that this statute includes attorney's fees, costs, and interest. Moreover, in cases involving indemnification from a third party, attorney's fees and costs are usually recoverable. *See Conann Constructors, Inc. v. Muller,* 618 S.W.2d 564, 568 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.); *accord Humana Hosp. v. American Medical Sys.,* 785 S.W.2d 144, 145 (Tex.1990). The purpose of indemnity is to make a party whole, and if the indemnitee must bear the expense of defending a suit,

then he is not made whole by the indemnification. *Conann,* 618 S.W.2d at 568. We conclude the indemnification for "all liability" under article 1436c includes attorney's fees, costs, and interest.[4]

 We therefore address whether CP & L's summary judgment evidence is sufficient to support its claim for attorney's fees. We must review the record in accordance with the following standards:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

CP & L's summary judgment evidence regarding attorney's fees consisted of attorney James W. Wray's affidavit. Attached to Wray's affidavit and incorporated by reference is an itemized statement of the expenses incurred and legal services rendered to CP & L in the defense of the Smith lawsuit. Also attached is an itemized statement of expenses incurred and legal services rendered in prosecuting CP & L's indemnity suit against Olson.

Once the movant for summary judgment has established a right to a summary judgment, the burden shifts to the non-movant to respond and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *see also McCord v. Memorial Medical Center Hosp.,* 750 S.W.2d 362, 364 (Tex.App.—Corpus Christi 1988, no writ).

---

**4.** We believe our holding is consistent with the result in *Eller.* The *Eller* Court initially described HL & P's suit for indemnification as including attorney's fees, among other things. *Eller,* 635 S.W.2d at 133. Throughout the remainder of its opinion, the court referred only to the suit as one for indemnification and in determining that article 1436c provided a cause of action for indemnity, the court did not distinguish between the amount of the settlement, the attorney's fees, interest and costs. *Id.* at 133–35.

Olson did not present any controverting evidence. Contrary to Olson's contentions, CP & L's summary judgment proof does allocate attorney's fees and costs between those incurred defending CP & L in the Smith lawsuit and prosecuting CP & L's indemnity suit against Olson. CP & L's evidence establishes CP & L's attorney's fees for defense of the Smith lawsuit as a matter of law. We overrule Olson's second reply point.

Pursuant to the uncontroverted summary judgment evidence, CP & L is entitled to $27,464.00 in attorney's fees and $1,782.44 in costs incurred in defense of Smith's claim. Additionally, pursuant to further uncontroverted summary judgment evidence, an affidavit from a certified public accountant, CP & L is entitled to recover prejudgment interest of $3,514.99.

The trial court's judgment in favor of CP & L is affirmed; that part of the judgment denying CP & L indemnity for attorney's fees, costs and interest is reversed and rendered in favor of CP & L.